UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VINCENTE JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-1992** |
| **TETRA APPLIED TECHNOLOGIES, L.L.C.** | **SECTION "I"** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant, TETRA Applied Technologies, LLC ("TETRA"), seeking dismissal of the above-captioned matter on the ground that plaintiff does not qualify as a seaman under the Jones Act. For the following reasons, TETRA's motion for summary judgment is **DENIED.**

## BACKGROUND

Plaintiff, Vincente Johnson ("Johnson"), was employed by TETRA's P&A Operations division as a rigger.[1] He was hired on July 14, 2008, and assigned to the company's Offshore P&A Division.[2] During his employment with TETRA, Johnson sometimes worked on land, but the majority of his time was spent performing plug and abandon work on offshore satellite wellheads.[3] Most of Johnson's offshore work assignments involved the use of lift boats owned by third parties.[4] The crew members of these lift boats were employed by the company that owned the lift boat, not by TETRA.[5]

---

[1] R. Doc. No. 20-2, pp. 8 ¶ 3.
[2] R. Doc. No. 20-2, at ¶¶ 3-4.
[3] R. Doc. No. 20-2, pp. 74-79. Johnson testified in his deposition that 60% to 80% of his work for TETRA was on small offshore satellite wellheads that had only an 8' by 8' piece of grating around them, such that the majority of the work performed on these wellheads was performed from a lift boat. R. Doc. No. 26-1, pp. 2-4; R. Doc. No. 35-1, p. 12. R. Doc. No. 20-2, pp. 74-79.
[4] R. Doc. No. 31-1, pp. 1-7. TETRA has submitted affidavit testimony from Michael Lauland, its human resources director, and Keith Lagarde, its director of operations, along with attached time records which demonstrate that

1

On or about September 22, 2010, Johnson was working aboard the SUPERIOR INTERVENTION when he experienced a "hemorrhage in his brain."[6] He subsequently filed this lawsuit against TETRA pursuant to the Jones Act and general maritime law alleging that he suffered permanent, disabling injuries to his brain which could have been avoided or lessened had TETRA taken proper medical action.[7] Johnson claims that TETRA is liable for negligence in failing to provide a safe place to work, a properly trained medical technician, proper medical treatment and medications, and for creating and maintaining an unseaworthy vessel.[8] Johnson also claims that TETRA is obligated to provide him with maintenance and cure payments from the date he was rendered unfit for duty until maximum cure is achieved.[9]

TETRA filed this motion for summary judgment seeking dismissal of all claims asserted by Johnson pursuant to the Jones Act and general maritime law. According to TETRA, the undisputed facts demonstrate that, at the time of his illness, Johnson was a land based oil & gas worker who was regularly assigned to work on fixed platforms of offshore wells.[10] TETRA asserts that Johnson was not a member of the crew of any vessel, that TETRA did not own, operate, or charter the vessel upon which he was injured, and that Johnson's sole and exclusive remedy against TETRA for any injury or illness he may have suffered is a claim for benefits under the applicable workers' compensation law.[11]

---

Johnson spent approximately 67% of his time performing plug and abandon work on offshore wells which involved the use of a lift boat.  R. Doc. No. 20-2, pp. 8-9, and 74-79; R. Doc. No. 31-1, pp. 1-7.
[5] R. Doc. No. 20-2, pp. 83 ¶15.
[6] R. Doc. No. 1, at ¶ V.
[7] *Id.*
[8] R. Doc. No. 1, at ¶ VI.
[9] *Id.* at ¶ VIII.
[10] R. Doc. No. 20-1, at pp. 1-2.
[11] *Id.*

**LAW AND ANALYSIS**

I.      **STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a

3

genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II.     SEAMAN STATUS

The United States Supreme Court has defined the essential requirements for seaman status as twofold. First, "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S. Ct. 2172, 2190, 132 L. Ed. 2d 314 (1995) (*quoting McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355, 111 S. Ct. 807, 817, 112 L. Ed. 2d 866 (1991)). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368, 115 S. Ct. at 2190. Qualifying as a seaman under the Jones Act hinges on an employee's status in relation to a vessel rather than on the nature or location of the injury. *Id.* at 359-63, 115 S. Ct. at 2185-88. "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Id.* at 361, 115 S. Ct. at 2186.

The inquiry into seaman status is a mixed question of law and fact and, therefore, "it often will be inappropriate to take the question from the jury." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S. Ct. 1535, 1540, 137 L. Ed.2d 800 (1997). Summary judgment or a directed verdict is appropriate where the facts and the law will reasonably support only one conclusion. *Id.* (*citing Wilander*, 498 U.S. at 356, 111 S. Ct. at 818). However, "'[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a

'member of a crew,' it is a question for the jury.'" *Chandris*, 515 U.S. at 369, 115 S. Ct. at 2190 (*quoting Wilander*, 498 U.S. at 356, 111 S. Ct. at 818).

### A. Contribution to Vessel's Function or Mission Accomplishment

With respect to the first requirement for seaman status, TETRA argues that Johnson cannot show that he contributed to the function of any vessel because his job duties primarily related to the plugging and abandonment of oil and gas wells, and his job duties did not include any task related to the navigation or operation of a vessel.[12] TETRA asserts that it did not assign Johnson to be a member of the crew of any vessel.[13]

While the Jones Act's protections "only extend to those maritime employees who do the ship's work," "this threshold requirement is very broad: 'All who work at sea in the service of a ship' are *eligible* for seaman status." *Chandris,* 515 U.S. at 368, 115 S. Ct. at 2190 (*quoting Wilander*, 498 U.S. at 354, 111 S. Ct. at 817). Contrary to TETRA's assertion, an employee need not "aid in navigation or contribute to the transportation of the vessel" to qualify as a seaman. *Wilander*, 498 U.S. at 355, 111 S. Ct. at 817.

The fact that Johnson's primary duties related to plugging and abandoning wells does not necessarily establish that he failed to contribute to the function of a vessel. Johnson testified that most of his offshore work was performed from lift boats, and TETRA does not dispute that the lift boats qualify as vessels in navigation for purposes of the Jones Act.[14] On several occasions, Johnson rode the lift boats from satellite wellhead to satellite wellhead performing plug and

---

[12] R. Doc. No. 20-1, pp. 9-10.
[13] TETRA also asserts that it did not own the lift boats involved in Johnson's offshore work or employ the lift boats' crew members. R. Doc. No. 20-1, pp. 10-11. However, the plaintiff's employer need not be the owner or operator of the vessel or group of vessels upon which the plaintiff works for the plaintiff to qualify as a seaman. *See Jenkins v. Aries Marine Corp.*, 554 F.Supp.2d 635, 641 (E.D. La. 2008) (Engelhardt, J.) (finding that rigger's employer did not have to be the owner or operator of a vessel upon which the rigger worked in order for the rigger to qualify as a seaman); *Alex v. Wild Well Control, Inc.*, 2009 WL 1507359, at *5 (E.D. La. 2009) (Fallon, J.) ("There is no basis to find that a sea-based worker, on an identifiable fleet of vessels subject to common ownership or control, must work on vessels owned or controlled by the defendant-employer to qualify as a seaman.").
[14] R. Doc. No. 26-1, p. 173.

5

abandon work. During these occasions, Johnson would complete work on one wellhead and then ride on the lift boat to another wellhead where he would perform additional work.[15] The offshore work required the use of cranes that were actually part of the lift boats.[16] Johnson received directions from the crane operators who were employed by the "boat people," and he attended safety meetings on the vessels with other crew members.[17] Further, Johnson testified in his deposition that he loaded and unloaded equipment, groceries, and other supplies used on the lift boats, that he assisted in moving the gangway from the lift boats to the satellite wellheads, and that he was responsible for cleaning the decks of the lift boats and doing other housekeeping chores on the lift boats.[18] Johnson also testified that he considered himself to be a member of the crew "because we all worked together."[19]

In light of this evidence, a reasonable jury could conclude that Johnson contributed to the function of the lift boats in the performance of his duties.[20] *See Becker v. Tidewater, Inc.*, 335 F.3d 376, 387-88 (5th Cir. 2003) ("[S]atisfying the first prong of the test is relatively easy: the claimant need only show that he 'do[es] the ship's work.'" (*quoting Chandris*, 515 U.S. at 368, 115 S. Ct. at 2172)).

---

[15] R. Doc. No. 179.
[16] R. Doc. No. 26-1, pp. 175-76.
[17] R. Doc. No. 26-1, pp. 176-77, and 182.
[18] R. Doc. No. 26-1, pp. 178-82.
[19] R. Doc. No. 26-1, pp. 182.
[20] TETRA attempts to analogize this case to *Bourqe v. Chevron USA, Inc.*, 2003 WL 21276356 (E.D. La. 2003) (Porteous, J.), where the Court determined that an employee of Tetra Technologies, Inc. was not a seaman for purposes of determining whether the case was improperly removed. The plaintiff in *Bourque* performed "platform-based" offshore work that was "occasionally" facilitated by the presence of a lift boat used solely for storing tools or housing personnel during the job. *Bourque*, 2003 WL 21276356, at *1. The plaintiff did not allege that his duties contributed to the function of the lift boats. *Id.* at *6. The facts of this case are distinguishable from those in *Bourque*. The function of the lift boats at issue in this case was not limited to storing equipment and housing personnel like the lift boats in *Bourque*. Moreover, unlike the plaintiff in *Bourque*, Johnson testified to performing a number of duties that contributed to the function of the lift boats.

B.     **Substantial Connection**

TETRA argues that Johnson also fails to meet the second *Chandris* requirement for seaman status, which requires a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris,* 515 U.S. at 368, 115 S. Ct. at 2190.  TETRA asserts that Johnson cannot meet this requirement because his connection with the lift boats involved with his offshore work was transitory and sporadic, and he did not work on a vessel or fleet of vessels under common ownership or control.[21]

The Supreme Court has provided the following explanation regarding the substantial connection requirement:

> The fundamental purpose of th[e] substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Harbor Tug*, 520 U.S. at 555, 117 S. Ct. at 1540 (*quoting Chandris*, 515 U.S. at 368, 115 S. Ct. at 2190).  "For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Id.*  Further, seaman status "must be determined by examining the claimant's overall employment-related connection to a vessel in navigation rather than focusing on the facts at the time of the injury." *St. Romain v. Industrial Fabrication and Repair Serv., Inc.*, 203 F.3d 376, 379 n. 9 (5th Cir. 2000) (*citing Chandris*, 515 U.S. at 363, 115 S. Ct. at 2172).

With respect to the duration component of the substantial connection requirement, the Fifth Circuit has stated that, as a general rule of thumb, in order to qualify as a Jones Act seaman, an employee should demonstrate that at least thirty percent of his work is spent in service of a

---

[21] *Id.* R. Doc. No. 20-1, p. 9.

vessel (or an identifiable group of vessels) in navigation.[22] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 375 (5th Cir. 2001).[23]  "In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, *the question is whether the vessels are subject to common ownership or control.*" *Id.* at 376 (*citing Harbor Tug & Barge Co.*, 520 U.S. at 556-57, 117 S. Ct. at 1535).

In *Roberts*, the Fifth Circuit affirmed summary judgment on a plaintiff's Jones Act lawsuit against his employer finding that plaintiff was not a seaman because he fell short of the thirty percent threshold for time spent in service of a fleet. *Roberts*, 266 F.3d at 376-78.  The plaintiff in *Roberts* performed plug and abandon work in a shop on land, on offshore well platforms with lift boats alongside, and on offshore well platforms with no vessel involvement. *Id.* at 376.  Some of the lift boats used were owned by the employer, while others were owned by third-parties.  In determining whether plaintiff complied with the thirty percent guideline, the court counted the time plaintiff spent working on offshore platforms with lift boats alongside. *Id.*  However, the court counted the time plaintiff spent working alongside the employer's lift boats, which amounted to 24.88% of his time, separately from the time plaintiff spent working alongside lift boats owned by third parties, which amounted to 13.54%.  *Id.*  Because plaintiff could not show that at least 30% of his time was spent in the service of a vessel or an identifiable

---

[22] The Supreme Court approved of this benchmark, but clarified it as "no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.  As we have said, '[t]he inquiry into seaman status is fact specific: it will depend on the nature of the vessel and the employee's precise relation to it.'" *Chandris,* 515 U.S. at 371, 115 S. Ct. at 2191 (quoting *Wilander*, 498 U.S. at 356, 111 S. Ct. at 818).

[23] While *Roberts* addressed the thirty percent threshold in the context of a group of vessels owned by the plaintiffs' employer, cases from this district have clarified that *Roberts* did not overrule "long-standing Fifth Circuit jurisprudence that the employer need not be the owner or operator of the group of vessels at issue," and that that the vessels constituting the thirty percent must only be owned by a common entity. *Jenkins*, 554 F. Supp.2d at 641 (*citing Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993)); *Alex*, 2009 WL 1507359, at *5.

fleet of vessels under common ownership or control, the court found that he could not prove seaman's status. *Id.*[24]

Similarly, in *St. Romain*, the plaintiff performed offshore plug and abandon work on eleven different assignments that involved the use of lift boats.[25] Because the lift boats used on these assignments were owned by nine different companies and were chartered by five different entities, and plaintiff failed to establish that the "liftboats at issue were controlled by any one single entity…," the Fifth Circuit found that plaintiff could not demonstrate a substantial connection with a vessel or identifiable group of vessels, and it affirmed summary judgment in favor of the employer. *St. Romain*, 203 F.3d at 379-80.

TETRA contends that Johnson cannot demonstrate that at least 30% of his work time was spent in service of vessels owned by a common entity.[26] Johnson counters that he specifically recalls working for TETRA supervisors Ricky Roberts and Adam Purdue on multiple jobs that involved lift boats which appeared to be owned by the same company based on their color schemes and layouts.[27]

TETRA has provided a summary of the time Johnson spent on each of his work assignments, and testimony from Keith LaGarde ("LaGarde"), its director of operations, regarding the lift boats used during each of Johnson's offshore work assignments.[28] According to TETRA's time records and LaGarde's testimony, Johnson spent approximately 17% of his

---

[24] "The 30 percent floor does not change when an 'identifiable group' of vessels in navigation is at issue, rather than just one vessel….'to qualify as a seaman an employee must establish an attachment to a vessel *or to an identifiable fleet of vessels*.'" *Roberts*, 266 F.3d at 375 (*quoting St. Romain*, 203 F.3d at 379-80).
[25] Relying on *Roberts* and *St. Romain*, TETRA contends that the Fifth Circuit has held that an "oil and gas worker doing 'plug and abandon work' on an offshore platform is not a seaman." R. Doc. No. 20-1, p. 12 (*citing St. Romain, Inc.,* 203 F.3d at 376; *Roberts*, 266 F.3d at 368). However, neither *St. Romain* nor *Roberts* holds that an offshore worker performing plug and abandon work is not a seaman *per se*. Rather, in both cases, the Fifth Circuit evaluated the amount of time the plaintiffs spent working on lift boats under common ownership or control to determine whether the plaintiffs had a substantial connection with an identifiable fleet of vessels when determining seaman status. *See St. Romain*, 203 F.3d at 379-80; *Roberts*, 266 F.3d at 376-78.
[26] R. Doc. No. 35-1, p. 2.
[27] R. Doc. No. 26, pp. 7-8 (*citing* Johnson Affidavit, R. Doc. No. 29-1).
[28] R. Doc. Nos. 20-2 and 31-1.

9

time working on land in a shop, 16% of his time performing offshore plug and abandon work with no vessel involvement, and 67% of his time performing plug and abandon work on nine different offshore assignments that involved the use of lift boats.[29] The lift boats used for these nine assignments, however, were owned by the same four companies: Hercules Liftboats, Superior Energy Services, Offshore Marine Contractors, Inc., and Montco Offshore ("Montco").[30] Further, the Court finds that Johnson spent 994 hours performing offshore work that involved the use of lift boats owned by Montco.[31] Therefore, based on the total hours worked by Johnson (2887 hours), Johnson spent approximately 34.4% of his total work hours performing offshore work that involved Montco lift boats.[32] The evidence in the record suggests that Johnson meets the Fifth Circuit's thirty percent threshold for demonstrating seaman status.

---

[29] R. Doc. Nos. 20-2 and 31-1. Johnson worked for TETRA a total of 2,887 hours. *See* R. Doc. No. 20-2, pp. 74-76; R. Doc. No. 26, p. 8; R. Doc. No. 35-1, p. 2. Johnson spent 496 hours (17.2% of his time) working in a shop on land, and 446 hours (15.5% of his time) doing offshore work that did not involve the use of a lift boat. R. Doc. No. 20-2, pp. 74-79; R. Doc. No. 31-1 at ¶¶ 10, 15, and 26. Johnson spent a total of 1755 hours (61% of his time) doing offshore work that involved the use of lift boats. R. Doc. No. 20-2, pp. 74-79; R. Doc. No. 31-1 at ¶¶ 3, 5, 6, 8, 11, 13, 16, 18, 19, 21, 22, 24, 28, and 30. In addition, Johnson spent 180 hours (6.2% of his time) performing offshore work for TETRA's client Mariner Energy on a well in West Cameron Block 163 ("WC 163") from June 17 through June 28, 2010 and from July 8, 2010 through July 10, 2010. R. Doc. No. 20-2, pp. 77-78. TETRA's records do not reflect whether a lift boat was used in connection with this work. However, for purposes of this summary judgment motion, the Court will assume that a lift boat was used in connection with Johnson's work on WC 163. TETRA has provided no evidence to the contrary.

[30] R. Doc. No. 31-1, at ¶¶ 5, 8, 13, 18, 21, 24, and 30.

[31] Based on TETRA's time records and LaGarde's testimony, Johnson spent 295 hours working on an offshore job for Mariner, 77 hours on an offshore job for Contango, and 442 hours on an offshore job for Merit. R. Doc. No. 20-2, pp. 76-77; R. Doc. No. 31-1, ¶¶ 16, 18, 19, 21, 22, and 24. These jobs involved the use of lift boats owned by Montco. *Id.* As provided in the previous footnote, Johnson spent 180 hours performing offshore work for Mariner on a well in West Cameron Block 163 ("WC 163") from June 17 through June 28, 2010 and from July 8, 2010 through July 10, 2010. R. Doc. No. 20-2, pp. 77-78. TETRA's records do not reflect whether a lift boat was used in connection with this work, or the owner of the lift boat if one was used. However, for purposes of this summary judgment motion, the Court will infer that a Montco lift boat was used in connection with Johnson's work on WC 163.

Such an inference is justifiable given plaintiff's testimony that he recalls being supervised by Ricky Roberts and Adam Purdue on offshore work assignments for which the lift boats appeared to be owned by the same company based on their color scheme and layout. R. Doc. No. 29-1, ¶ 3. TETRA's records establish that Johnson's 442 hour work assignment for Merit involving a Montco lift boat was supervised by Ricky Roberts, and that Adam Purdue supervised the Mariner work assignment on WC 163 for which ownership of the lift boat is unknown. R. Doc. No. 20-2, pp. 45 and 55. Further, a Montco lift boat was used on a prior Mariner job. R. Doc. No. 31-1, pp. 2 ¶¶ 16-18. Accordingly, the Court finds that Johnson spent a total of 994 hours (295 + 77 + 442 + 180) working on offshore assignments involving the use of a Montco lift boat.

[32] In his deposition, Johnson testified that when he worked on offshore assignments that involved the use of a lift boat, he spent "most" of his time working off of the lift boat. When questioned further, Johnson subsequently

Accordingly, a genuine issue of material fact exists with respect to whether Johnson had a substantial connection to an identifiable group of vessels, and the question of Johnson's seaman status must be submitted to a jury.[33]  For the foregoing reasons,

**IT IS ORDERED** that TETRA's motion for summary judgment is **DENIED**.

**IT IS FURTHER OREDERED** that Johnson's request for additional discovery is **DISMISSED AS MOOT.**

New Orleans, Louisiana, August 7, 2012.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

approximated that he spent 60% of his time working from the lift boat, and the remaining time working on the well platform.  R. Doc. No. 35-1, pp. 173-74.  Based on this testimony, TETRA suggests that the Court should count only 60% of the hours Johnson spent working on offshore assignments involving the use of lift boats for purposes of the thirty percent threshold.  R. Doc. No. 35-1, pp. 5-7.  This approach conflicts with the approach used by the Fifth Circuit in *Roberts*, where the court counted the percentage of time that the plaintiff spent working with "vessels alongside" for purposes of determining whether the plaintiff met the thirty percent threshold.  *Roberts*, 266 F.3d at 376.

[33] Johnson has requested that the Court order TETRA to produce the names of all vessels to which Johnson was assigned and the names of the owners of such vessels in the event that the Court finds that summary judgment on Johnson's status as a seaman is warranted.  R. Doc. No. 26, pp. 8-9.  The Court notes that Tetra has already provided the requested information in connection with its reply.  R. Doc. No. 31-1.  Accordingly, Johnson's request for additional discovery pursuant to Rule 56 of the Federal Rules of Civil Procedure is moot.